# UNITED STATES DISTRICT COURT

U.S. DISTRICT COURT
EASTERN DISTRICT - WI
FILED

2026 OCT 27 P 1:51

CLERK OF COURT

EASTERN DISTRICT OF WISCONSIN

JAMIE LYNN HAEUSER, Plaintiff,

v.

JACK A. PITZO, in his individual capacity, Defendant.

Case No. 2:26-cv-01696-LA

## FIRST AMENDED COMPLAINT

42 U.S.C. § 1983 — FIRST AMENDMENT RETALIATION

JURY TRIAL DEMANDED

# TABLE OF CONTENTS


Preliminary Statement Regarding Amendment ........ 3

Introduction ........ 3

Jurisdiction And Venue ........ 6

Judicial Immunity And The Precise Function Challenged ........ 6

Parties ........ 7

Factual Allegations ........ 8

Plaintiff's Protected Public Speech And Petitioning Activity ........ 8

Facebook Block And Accidental Friend Request ........ 9

Clerk-Filed Document 93 ........ 9

Defendant Transmits The Clerk-Filed Material ........ 11

November 18, 2025 Law-Enforcement Contact ........ 11

Recorded Sheriff Encounter · Time-Stamped Video Statements ........ 13

Defendant's Later Statement ........ 15

Facebook Activity And Subsequent Statements ........ 16

Later Facebook Story Evidence ........ 16

Continuing Fear Following Facebook Story Activity ........ 16

Count I · First Amendment Retaliation (42 U.S.C. § 1983) ........ 17

Nonjudicial And Extrajudicial Nature Of Defendant's Conduct ........ 20

Causation ........ 23

Damages And Injuries ........ 23

Evidentiary Basis ........ 24

Supplemental Statement — Potential Additional Evidence Of Retaliation In State-Court Proceedings ........ 26

Prayer For Relief ........ 26

Jury Demand ........ 27

## PRELIMINARY STATEMENT REGARDING AMENDMENT

Plaintiff submits this First Amended Complaint to clarify, consolidate, and supplement the factual allegations supporting her original civil-rights action. The amendment does not add a new defendant, a separate underlying incident, or a new constitutional theory.

It provides greater factual detail concerning the same alleged First Amendment retaliation, including Plaintiff's closer review of the preserved sheriff-encounter recording, the documented communications preceding the deputies' dispatch, the two distinct chilling effects on her protected activity, and the resulting alleged emotional, physical, and financial injuries.

Plaintiff has only recently become emotionally able to watch the November 18, 2025 recorded encounter carefully and document specific statements and playback times. Previously, revisiting the footage caused significant emotional distress.

Plaintiff states that receiving mental-health treatment and experiencing the federal court's measured consideration of her allegations, including allowing the case to proceed beyond initial screening, gave her a sense of relief, reassurance, and mental clarity that helped her undertake this detailed review.

Plaintiff does not suggest that the Court has already found Defendant's conduct unlawful or resolved the merits of her claim. Plaintiff further clarifies the distinction between Defendant's judicial functions and his alleged involvement in initiating or materially contributing to a law-enforcement response concerning Plaintiff's protected speech and petitioning.

Plaintiff alleges that the specific conduct challenged was nonjudicial in function and asks the Court to determine whether absolute judicial immunity applies. Plaintiff does not ask the Court to abolish judicial immunity generally or to review or reverse any state-court ruling. The additional recording details concern the same November 18, 2025 encounter, not a new claim.

Plaintiff respectfully acknowledges that this First Amended Complaint is lengthy and apologizes to the Court for its substantial detail.

Plaintiff believes the specific facts, dates, communications, recorded statements, and surrounding circumstances are necessary to present the alleged constitutional injury accurately and to distinguish the conduct challenged from conduct potentially protected by judicial, absolute, or sovereign immunity. Plaintiff understands that the availability and scope of those immunities are legal questions for the Court.

Plaintiff has sincerely attempted to avoid unnecessary repetition and verbosity without omitting material allegations or the context needed to understand them. As a self-represented litigant, Plaintiff hopes to continue demonstrating diligence, integrity, and respect for the judicial process.

Plaintiff brings this action to seek accountability for the alleged violation of her constitutional rights and to continue her personal journey toward healing, not to burden the Court.

## INTRODUCTION

**1.** The underlying Waukesha County family-court case from which the historical events described in this Complaint arose is closed.

**2.** Plaintiff's son is eighteen (18) years old and is legally an adult.

**3.** There is therefore no ongoing child-custody or placement controversy between Plaintiff and Defendant for this Court to resolve.

**4.** Plaintiff is not bringing this federal action because she lost custody, disagreed with a placement decision, or seeks another opportunity to litigate the merits of the former family-court case.

**5.** Plaintiff does not ask this Court to reopen the family-court case, change custody or placement, reverse a family-court order, invalidate a judgment, or otherwise function as an appellate court over the concluded state proceedings.

**6.** Plaintiff seeks relief for an independent federal constitutional injury that can be adjudicated without changing a single family-court order.

**7.** The historical family-court record provides context for the independent conduct challenged here, including Defendant's knowledge, Plaintiff's protected speech and petitioning, filing instructions, subsequent statements, and involvement of law enforcement.

**8.** Plaintiff Jamie Lynn Haeuser brings this civil-rights action pursuant to 42 U.S.C. § 1983 against Defendant Jack A. Pitzo in his individual capacity.

**9.** Plaintiff does not seek to impose liability upon Defendant for judicial rulings, custody determinations, placement determinations, evidentiary rulings, scheduling decisions, or other ordinary adjudicative acts.

**10.** Instead, Plaintiff challenges Defendant's alleged conduct in becoming the complainant, reporting governmental official, referral source, or initiating governmental actor responsible for causing law-enforcement personnel to confront Plaintiff at her private residence late at night.

**11.** Sheriff's Department records obtained by Plaintiff expressly identify "PITZO, JACK" as the complainant associated with the November 18, 2025 incident.

**12.** Those records describe the matter as a harassment complaint involving Defendant.

**13.** Sheriff's documentation states that Defendant did not seek to file a criminal complaint but wanted Plaintiff personally spoken to and advised to stop contact outside what Defendant considered proper channels.

**14.** Sheriff's documentation further states that the communications being addressed were not threatening.

**15.** A central fact in this action is that the November material underlying Defendant's Sheriff's complaint was not a new private communication from Plaintiff to Defendant.

**16.** Approximately two months earlier, Defendant had addressed an issue in open court concerning materials that had reached an email account associated with Defendant.

**17.** Defendant instructed Plaintiff that future court-related materials were to be submitted through proper court-filing channels rather than privately communicated directly to him.

**18.** Plaintiff followed that instruction.

**19.** On or about November 16, 2025, Plaintiff's mother faxed an eight-page document on Plaintiff's behalf for filing with the Clerk of Circuit Court.

**20.** The document was received through the court-filing process and filed in Waukesha County Circuit Court Case No. 2008PA000558PJ on November 17, 2025.

**21.** The Clerk-filed document became Document 93 on the official circuit-court docket.

**22.** Document 93 bears court filing, receipt, scanning, case-number, document-number, filing-date, and docket information establishing that the document had entered the official court record.

**23.** Plaintiff did not privately transmit Document 93 to Defendant by email, text, Facebook Messenger, social-media conversation, or any other direct channel; it was submitted to the Clerk for filing.

**24.** Document 93 was submitted for filing with the Clerk of Circuit Court in the manner Plaintiff understood Defendant had previously instructed her to use.

**25.** Plaintiff alleges that the subsequent availability or review of Document 93 by the judge assigned to the case did not transform a document properly submitted to the Clerk for filing into a new private communication from Plaintiff to Defendant.

**26.** Nevertheless, on November 18, 2025, Defendant transmitted material associated with Document 93 from his official Wisconsin Courts email account in connection with the Sheriff's matter.

**27.** Sheriff's Department records separately identify Defendant as the complainant in that matter.

**28.** Later that evening, a Sheriff's CAD event was created.

**29.** Waukesha County Sheriff's personnel thereafter traveled to Plaintiff's private residence in Milwaukee.

**30.** According to the Sheriff's narrative, Milwaukee Police Department personnel accompanied the Waukesha County Sheriff's personnel.

**31.** Deputies were not executing an arrest or search warrant, contempt order, summons, or other judicial process requiring Plaintiff's detention, search, or appearance before Defendant.

**32.** Instead, Sheriff's records identify Defendant as the complainant and reflect that Defendant wanted Plaintiff personally contacted and spoken to.

**33.** During the encounter, deputies discussed communications involving Defendant, Facebook or social-media activity, matters appearing in the filed material, and possible criminal harassment.

**34.** Plaintiff denied having texted Defendant.

**35.** Plaintiff explained that the earlier communication issue had already been addressed approximately two months earlier.

**36.** Sheriff's CAD documentation contemporaneously records Plaintiff's statement that the emails involving Defendant occurred in September and that she had sent no additional emails since.

**37.** Defendant subsequently stated on the court record concerning the earlier issue: "We've not had contact outside of that."

**38.** Plaintiff alleges that Defendant's later statement supports her contention that no new direct private communications followed the September issue.

**39.** Plaintiff alleges that Defendant's statement also accords with the filing history: Document 93 was filed with the Clerk, not privately sent to Defendant.

**40.** Plaintiff therefore alleges that the November 18 law-enforcement referral cannot simply be characterized as reporting a renewed improper ex parte communication.

**41.** Plaintiff does not challenge Defendant's receipt, review, consideration, or judicial disposition of Document 93.

**42.** Plaintiff challenges what Defendant allegedly did afterward: functioning as the named complainant or reporting governmental actor who invoked law-enforcement intervention and caused officers to confront Plaintiff at her private residence.

**43.** Plaintiff alleges that this conduct followed her public criticism of Defendant and governmental conduct, her court filings and petitions, and her Facebook speech on matters of public concern.

**44.** Plaintiff alleges that the late-night law-enforcement confrontation, together with references to possible criminal harassment, constituted adverse governmental action capable of deterring a person of ordinary firmness from continuing protected First Amendment activity.

**45.** Plaintiff seeks relief for that independent federal constitutional injury.

## JURISDICTION AND VENUE

**46.** This Court has federal-question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claim arises under the Constitution and laws of the United States.

**47.** This Court also has jurisdiction pursuant to 28 U.S.C. § 1343 because Plaintiff seeks relief for an alleged deprivation of federally protected civil rights.

**48.** Plaintiff brings this action pursuant to 42 U.S.C. § 1983.

**49.** Defendant was at all relevant times a Wisconsin Circuit Court judge and a person possessing governmental authority under state law.

**50.** Plaintiff alleges that Defendant used, invoked, or benefited from his governmental position, authority, access, influence, and credibility when communicating with the Waukesha County Sheriff's Department concerning Plaintiff.

**51.** Defendant's November 18, 2025 communication concerning Plaintiff was transmitted from an official Wisconsin Courts governmental email account.

**52.** Plaintiff alleges that Defendant invoked governmental law-enforcement machinery in connection with the challenged conduct.

**53.** Plaintiff therefore alleges that Defendant acted under color of state law.

**54.** Defendant is sued solely in his individual capacity.

**55.** Plaintiff does not seek damages against the State of Wisconsin.

**56.** Venue is proper in the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1391 because Defendant acted in Waukesha County, Wisconsin, and a substantial part of the events giving rise to Plaintiff's claim occurred within this District.

## JUDICIAL IMMUNITY AND THE PRECISE FUNCTION CHALLENGED

**57.** Plaintiff recognizes that judges generally have absolute immunity from damages for acts taken in their judicial capacity, even when an act is alleged to be erroneous, malicious, or in excess of authority. Plaintiff does not contend that an improper motive alone defeats immunity.

**58.** Plaintiff does not seek damages for Defendant's adjudicative rulings, review of filings, case-management decisions, or directions issued as part of managing the underlying litigation.

**59.** The immunity inquiry is functional: the Court must examine the nature of the particular act, whether it is a function normally performed by a judge, and the parties' relationship to that act. See Stump v. Sparkman, 435 U.S. 349, 362 (1978); Forrester v. White, 484 U.S. 219, 227-29 (1988); Mireles v. Waco, 502 U.S. 9, 11-13 (1991).

**60.** Plaintiff acknowledges that a judge may take judicial or court-security measures in response to perceived improper contacts or safety concerns, and that involving officers does not by itself make a judicial act nonjudicial. Plaintiff asks that the specific function and circumstances alleged here be examined.

**61.** Plaintiff alleges that Defendant's challenged conduct was a separate referral or complaint seeking an executive law-enforcement visit to her home, rather than an adjudication, courtroom security directive, or enforcement of an issued court order.

**62.** In September 2025 Defendant addressed a prior communication issue and instructed Plaintiff to use court-filing channels. In November Plaintiff followed that instruction by having Document 93 submitted to the Clerk; she alleges it was not a renewed private message to Defendant.

**63.** Plaintiff does not challenge Defendant's receipt or judicial review of Document 93, or any decision he made within the pending state proceeding.

**64.** The act for which Plaintiff seeks damages is Defendant's alleged participation as the named complainant or referral source in bringing about a late-night law-enforcement encounter at Plaintiff's private residence in response to her protected activity.

**65.** The incident report identifies "PITZO, JACK" as complainant, and the documented official-account email to Deputy Aaron Bogie preceded creation of the CAD event. Those records support Plaintiff's inference of involvement; the complete referral instructions remain unverified.

**66.** Plaintiff alleges that the deputies were not executing a warrant, summons, contempt order, or other court directive requiring contact with her at home. She recognizes that the absence of such process alone does not decide the immunity issue.

**67.** The sheriff's report states that Defendant wanted Plaintiff spoken to rather than criminal charges filed. Plaintiff alleges that this supports, but does not conclusively establish, the nature of the requested intervention.

## PARTIES

**68.** Plaintiff Jamie Lynn Haeuser is an adult resident of Wisconsin.

**69.** Plaintiff was a party in Waukesha County Circuit Court Case No. 2008PA000558PJ.

**70.** That case is now closed.

**71.** Plaintiff's son is now eighteen years old and legally an adult.

**72.** Defendant Jack A. Pitzo served as the circuit court judge presiding over relevant portions of the former case.

**73.** Defendant is sued solely in his individual capacity for the allegedly nonjudicial or extrajudicial conduct described herein.

**74.** References to Defendant's judicial office are necessary to explain his state-actor status, his knowledge of Plaintiff, his governmental access and authority, and the circumstances surrounding his communication with law enforcement.

## FACTUAL ALLEGATIONS

**75.** On or about September 19, 2025, Defendant addressed an issue in open court concerning materials from Plaintiff that had reached an email account associated with Defendant.

**76.** The materials included court-related information, exhibits, filings, or similar materials.

**77.** Defendant explained that the manner in which the materials had reached him created an improper ex parte communication or filing issue.

**78.** Defendant instructed Plaintiff regarding the proper manner in which future court materials should be submitted.

**79.** Defendant told Plaintiff, "You don't need to contact me at any juncture."

**80.** Defendant also told Plaintiff, "I know you don't know that."

**81.** Plaintiff alleges that this statement reflected Defendant's recognition that Plaintiff had not previously understood the procedural problem.

**82.** The September communication issue was addressed in open court. Defendant identified the procedural problem and instructed Plaintiff to submit future court materials through proper filing channels rather than sending them privately to Defendant. Plaintiff understood and complied.

**83.** Following that hearing, Plaintiff did not continue unwanted direct personal email communications with Defendant, did not begin texting him, and alleges that she has never texted Defendant.

**84.** Defendant had firsthand knowledge of the September communication, the filing instructions he gave Plaintiff, and whether she subsequently contacted him privately. He possessed that knowledge approximately two months before Sheriff's personnel visited Plaintiff's residence.

## PLAINTIFF'S PROTECTED PUBLIC SPEECH AND PETITIONING ACTIVITY

**85.** During the underlying proceedings, Plaintiff publicly criticized Defendant and the handling of matters occurring within the Waukesha County court system.

**86.** Plaintiff used Facebook and other public channels to express criticism concerning public officials and governmental conduct.

**87.** Plaintiff's speech addressed judicial proceedings, perceived governmental misconduct, public officials, and matters of public concern.

**88.** Some of Plaintiff's Facebook activity occurred on or concerned a public-facing Facebook page associated with Defendant's prior judicial campaign or public presence.

**89.** Defendant became aware of Plaintiff's Facebook activity.

**90.** Plaintiff also engaged in petitioning activity by submitting objections, complaints, filings, requests, and other materials through governmental channels.

**91.** Plaintiff alleges that lawful filings and petitions to government constituted protected petitioning activity.

**92.** Plaintiff expressly disputes any characterization of her lawful court filings, public criticism, or protected petitioning activity as threatening conduct or unlawful harassment. Plaintiff alleges that Defendant instead engaged in unlawful harassment and retaliation against her. During the November 18, 2025 sheriff encounter, Plaintiff asked the responding deputies to help get Defendant to stop harassing her. Plaintiff made that request at the time of the encounter, before filing this federal action, demonstrating her contemporaneous belief that Defendant's conduct was wrongful and intimidating.

**93.** Plaintiff alleges that the activity relevant to this claim consisted of criticism of governmental officials, lawful petitioning, court filings, and related protected activity.

## FACEBOOK BLOCK AND ACCIDENTAL FRIEND REQUEST

**94.** During the relevant period, Plaintiff attempted to block Defendant on Facebook.

**95.** In the course of doing so, Plaintiff states that a friend request was accidentally generated or transmitted.

**96.** Plaintiff did not intend to establish a private Facebook relationship with Defendant.

**97.** No ongoing Facebook friendship between Plaintiff and Defendant resulted from the accidental request.

**98.** Plaintiff blocked Defendant.

**99.** Defendant became aware that Plaintiff had blocked him.

**100.** Defendant later discussed the friend-request issue with Plaintiff on the record.

**101.** Plaintiff explained that the request occurred accidentally while she was attempting to block Defendant.

**102.** Defendant responded that he understood that it had been an accident.

**103.** Plaintiff alleges that this exchange demonstrates Defendant understood that Plaintiff was attempting to prevent private social-media interaction rather than initiate an ongoing private Facebook relationship with him.

**104.** Plaintiff does not contend that a Facebook friend request can never raise an ex parte concern.

**105.** Plaintiff alleges the narrower factual proposition that this particular accidental request did not result in an ongoing Facebook friendship or continuing private Facebook communication between Plaintiff and Defendant.

**106.** Plaintiff relies upon the complete chronology and totality of the evidence rather than the accidental request alone.

## CLERK-FILED DOCUMENT 93

**107.** The distinction between September and November is central to Plaintiff's claim.

**108.** September involved the earlier issue concerning materials reaching an email account associated with Defendant.

**109.** Defendant addressed that issue in court and instructed Plaintiff to use proper filing procedures.

**110.** November involved Plaintiff doing what Defendant had instructed her to do: submitting material through the court-filing process.

**111.** On or about November 16, 2025, Plaintiff's mother transmitted an eight-page document by fax from her workplace on Plaintiff's behalf.

**112.** The fax was transmitted for filing with the Clerk of Circuit Court in Waukesha County Circuit Court Case No. 2008PA000558PJ.

**113.** Plaintiff did not address or transmit the fax as a new private communication to Defendant.

**114.** The document was received through the court-filing process and filed in Case No. 2008PA000558PJ on November 17, 2025.

**115.** The document was docketed as Document 93.

**116.** Document 93 bore official filing and receipt information, including the case number, document number, filing date, scanning information, and related docket identifiers, identifying it as material entered into the official circuit-court record.

**117.** Plaintiff did not transmit Document 93 to Defendant by text message, private email, Facebook Messenger, or another direct personal communication; she submitted the material through the Clerk of Circuit Court in accordance with Defendant's prior instructions.

**118.** Plaintiff alleges that Defendant's subsequent receipt or review of Document 93 as the assigned judge did not transform that Clerk-filed submission into a new private communication from Plaintiff to Defendant.

**119.** Among the materials contained within Document 93 were screenshots of a Facebook Messenger conversation involving a third party.

**120.** Document 93 also contained court-record information concerning Clyde Kelvin Thompson.

**121.** The Messenger screenshots contained within Document 93 were not screenshots of Plaintiff exchanging Messenger messages with Defendant.

**122.** Plaintiff submitted the third-party Messenger evidence contained within Document 93 through the Clerk of Circuit Court because Plaintiff was reporting and documenting conduct by an individual associated with the opposing party that Plaintiff believed constituted harassment, unwanted monitoring, and intimidation and that was causing Plaintiff fear. Plaintiff submitted that evidence for consideration in the pending court proceeding through the authorized court-filing process. The submission was not an attempt to initiate or continue private communication with Defendant.

**123.** Plaintiff alleges that Defendant knew how the court filing process operated. Defendant was capable of recognizing the filing stamps, receipt information, scanning information, docket information, case number, and other court markings appearing on Document 93. Defendant knew that he had previously instructed Plaintiff concerning the proper procedure for submitting court materials. Defendant therefore possessed firsthand knowledge of the difference between a document properly filed through the Clerk and a new private communication sent directly to him.

**124.** The circuit-court docket further reflects that Defendant reviewed the Clerk-filed submission on November 18, 2025, after it had been received and entered into the court record as Document 93.

**125.** The November 18 docket reflects Defendant's review of the filed Document 93 and his direction to contact the Guardian ad Litem and father's counsel regarding their positions. Plaintiff alleges this

preceded the law-enforcement intervention and confirms Defendant encountered the material as a court filing.

## DEFENDANT TRANSMITS THE CLERK-FILED MATERIAL

**126.** On November 18, 2025, one day after Document 93 was filed, Defendant sent an email from his official Wisconsin Courts email account. The email was sent at approximately 7:28 p.m. The subject of Defendant's email identified Case No. 2008PA558PJ. Defendant's email included an attachment identified as "2008PA558PJ.pdf." Sheriff's Department public-records production identifies Defendant's email and its attachment as responsive records concerning Defendant's communication about Plaintiff and the November 18 incident.

**127.** Plaintiff alleges that the attachment was Document 93 or the Clerk-filed material described above. Plaintiff alleges that Defendant therefore personally transmitted the filed material in connection with the law-enforcement matter.

**128.** Sheriff's records separately identify Defendant as the complainant.

**129.** On November 18, 2025, at approximately 7:28 p.m., Defendant transmitted an email from his official Wisconsin Courts account to Deputy Aaron Bogie, with a case-related PDF attachment. At approximately 9:07 p.m., the Sheriff's CAD incident was created. The incident report identifies Defendant as the complainant. Plaintiff alleges that Defendant initiated the law-enforcement referral leading to the residential encounter.

**130.** Plaintiff alleges that Deputy Aaron Bogie acted upon Defendant's email and initiated or directed the subsequent dispatch process, resulting in deputies traveling to Plaintiff's residence that evening. The precise content of the email, the identity of the person who authorized the residential response, and any additional instructions remain subject to confirmation through the original email, attachment, CAD history, and related communications. Plaintiff does not allege as an established fact that Defendant knowingly lied to deputies, nor does she claim the attached PDF has been independently confirmed to be identical to Document 93.

**131.** Plaintiff distinguishes Defendant's legitimate judicial review of a Clerk-filed submission from the subsequent disputed law-enforcement referral.

**132.** Plaintiff alleges that the timing, identified complainant, and encounter support factual causation, subject to discovery concerning the intervening decisions of law-enforcement personnel.

## NOVEMBER 18, 2025 LAW-ENFORCEMENT CONTACT

**133.** Sheriff's records identify the resulting incident as W25079253.

**134.** Sheriff's records classify the nature of the matter as an "OTHER CFS" and identify harassment among the associated offense information.

**135.** The Sheriff's incident report identifies "PITZO, JACK" as the complainant.

**136.** The report describes the matter as a harassment complaint involving Defendant.

**137.** The report records that Defendant did not seek to file a criminal complaint.

**138.** Instead, the report describes Defendant as seeking contact with Plaintiff about communications he considered outside proper channels.

**139.** The Sheriff's incident narrative expressly characterizes the communications being addressed as non-threatening. Plaintiff alleges that the Sheriff's dispatch and deputy records likewise reflect no reported threat; however, the precise attribution of that assessment to Defendant or responding personnel is governed by the records' actual wording. The same incident report identifies Defendant as complainant and states that he wanted Plaintiff spoken to rather than criminal charges filed.

**140.** Plaintiff alleges that the documented non-threatening characterization, considered together with Defendant's official-account email preceding the CAD event, the Clerk-filed nature of the underlying submission, and the subsequent late-evening home encounter, is relevant circumstantial evidence of retaliatory motivation and causation; it does not alone establish an unlawful dispatch or the content of Defendant's instructions.

**141.** Sheriff's documentation reflects that deputies were told Plaintiff had used Defendant's personal email and Facebook concerning matters related to the court case.

**142.** The Sheriff's CAD event was created at approximately 9:07 p.m. on November 18, 2025.

**143.** Sheriff's personnel thereafter traveled to Plaintiff's residence in Milwaukee.

**144.** The Sheriff's narrative reflects that Milwaukee Police Department personnel accompanied the Waukesha County deputies.

**145.** Plaintiff's preserved recording documents the encounter at her private residence late that evening.

**146.** The encounter occurred at Plaintiff's home rather than inside a courtroom or during a scheduled court proceeding.

**147.** The deputies were not executing an arrest warrant.

**148.** The deputies were not executing a search warrant.

**149.** The deputies were not executing a commitment order requiring Plaintiff's detention.

**150.** The deputies were not serving Plaintiff with judicial process requiring her appearance.

**151.** The deputies were not executing an order requiring Plaintiff to be brought before Defendant.

**152.** During the encounter, Sheriff's personnel identified Defendant as the person responsible for sending or initiating the contact.

**153.** Plaintiff subsequently sought and obtained Sheriff's Department documentation concerning the incident.

**154.** The later-produced Sheriff's documentation expressly identifies Defendant as the complainant.

**155.** Plaintiff alleges that Defendant was therefore the originating or reporting governmental actor whose complaint or referral caused Sheriff's personnel to go to Plaintiff's residence.

**156.** Plaintiff has only recently become emotionally able to sit through and systematically review the preserved recording of the November 18, 2025 law-enforcement encounter and document specific statements and approximate playback timestamps. Plaintiff alleges that revisiting the footage previously caused significant fear, anxiety, and emotional distress associated with the encounter. The federal court's decision to permit her original civil-rights complaint to proceed beyond initial screening gave Plaintiff a sense of relief that her allegations would receive judicial consideration, without constituting a finding that Defendant violated her rights. Plaintiff alleges that this

reassurance, together with her ongoing mental-health treatment, helped her become sufficiently emotionally able to review the recording in detail.

**157.** The additional particulars concern the same incident alleged in her original Complaint, not a new incident.

**158.** During the encounter, deputies discussed the earlier email issue involving Defendant.

**159.** Plaintiff informed the deputies that the earlier issue had already been addressed approximately two months earlier.

**160.** During the encounter, deputies also discussed alleged text communications involving Defendant.

**161.** Plaintiff unequivocally states that she has never texted Defendant, never possessed or used his personal telephone number, and never exchanged private Messenger messages with him.

**162.** During the November 18, 2025 encounter, Plaintiff told deputies she had never texted Defendant and offered to retrieve her telephone to demonstrate that fact. Plaintiff states that deputies declined, saying it was unnecessary.

**163.** Deputies discussed Facebook and social-media activity during the encounter. Plaintiff disputes any suggestion that she had privately contacted Defendant through those services.

**164.** The recorded discussion included Clyde Kelvin Thompson, whose communications were referenced in Document

**93.** Plaintiff alleges that this discussion supports her belief that deputies had received or were addressing information from her Clerk-filed document.

**165.** Document 93 was a properly submitted court filing through the Clerk of Circuit Court, intended to inform the Court that Plaintiff was experiencing harassment, intimidation, and fear. Messenger screenshots attached to Document 93 documented communications involving a third party and directed toward Plaintiff; they were not messages between Plaintiff and Defendant. Submitting that evidence to the Clerk was not a text, Messenger message, or other private communication to Defendant.

**166.** The sheriff's CAD documentation refers to emails involving Defendant in September and records Plaintiff's statement that no additional emails had been sent since. Plaintiff disputes any inference that this entry establishes she ever privately emailed or messaged Defendant; her account is that she communicated through court filings.

**167.** The CAD documentation also records that Plaintiff was warned not to email or send Facebook messages to a Waukesha County judge. Plaintiff alleges that the warning did not reflect any text or private Messenger message she had sent Defendant, because she had sent none.

## RECORDED SHERIFF ENCOUNTER · TIME-STAMPED VIDEO STATEMENTS

168A. At approximately 6:38 in Plaintiff's preserved November 18, 2025 recording, a responding deputy stated, "Well, the judge doesn't have anything against you." Plaintiff responded, "Yes, he does." The deputy replied, "You might think that he has," and Plaintiff again stated, "Yeah, he does." Plaintiff offers this exchange to document her contemporaneously expressed belief and the deputy's response, not as independent proof of Defendant's motive.

168B. At approximately 7:03 in the same recording, a responding deputy corrected his earlier characterization of the communications, stating, "I, I, I just forgot it was not text messages, it was email, it was just email." Plaintiff responded that the email issue had occurred approximately two months earlier and had already been addressed during a court hearing. The deputy then stated, "It was just pictures of texts that I saw."

168C. Plaintiff alleges that the deputy's reference to pictures of texts is consistent with the Messenger screenshots included in Document 93, which Plaintiff had submitted through the Clerk of Circuit Court. Plaintiff did not privately text Defendant, and those screenshots did not depict a private text-message exchange between Plaintiff and Defendant. Plaintiff alleges that the recorded exchange supports her contention that the deputies were discussing previously raised communications and clerk-filed materials, rather than new private text messages from Plaintiff to Defendant. The deputy's statement alone does not conclusively establish which document he reviewed or what Defendant communicated to law enforcement.

**168.** The following are approximate positions in the preserved video, not times of day, and are subject to verification against the original recording: at approximately 7:00, a deputy discussed emails rather than texts and copies of communications; at approximately 7:15, a deputy referred to an individual identified during the encounter as "Cleetus Thompson," whom Plaintiff associates with Clyde Kelvin Thompson and material in Document 93; at approximately 7:30, when Plaintiff requested a report number, a deputy responded, "For a conversation, no"; at approximately 7:46, a deputy said the officers were not there to arrest Plaintiff.

**169.** At approximately 8:08 in the preserved recording, Plaintiff asked whether deputies could get Defendant to stop harassing her. At approximately 8:35, a deputy stated, 'We are not here to harass you.' At approximately 8:50, a deputy stated, 'How this got to us today, I don't know.' At approximately 9:00, Plaintiff was advised not to raise the incident with Defendant unless he raised it first. Eyewitness Jeremy Maddox, the father of Plaintiff's younger children, asked why deputies had been sent to her residence that evening, and a deputy responded, 'We don't ask those questions.' Plaintiff identifies these as statements from her preserved recording and her contemporaneous account; the approximate times are video positions, not clock times.

**170.** Plaintiff alleges that the deputies' remarks, including 'How this got to us today, I don't know' and 'We don't ask those questions,' suggest that responding law-enforcement personnel themselves expressed uncertainty about how the matter reached them and why the residential visit was necessary. Together with the shifting discussion of email, text, and Facebook communications, the late hour, and references to criminal harassment, those statements intensified Plaintiff's fear and confusion. Plaintiff offers the remarks as evidence of the encounter's circumstances and deterrent effect, not as proof that a deputy knew the referral was unlawful.

**171.** During the November 18, 2025 encounter, Plaintiff was visibly extremely upset, frightened, and intimidated. Plaintiff personally experienced simultaneous severe anxiety and panic attacks while the deputies were at her residence. The responding deputy's contemporaneous written narrative in Sheriff's incident report W25079253 expressly described Jamie as 'upset' and described her as emotionally affected by what she perceived as threats and harassment by the judge. The preserved encounter video further depicts Plaintiff's crying, distressed manner, and fearful responses. Plaintiff alleges that this contemporaneous officer observation and the recording corroborate her visible emotional distress, while her description of simultaneous anxiety and panic attacks is based on her own firsthand experience.

**172.** Plaintiff requested a report or incident number during the encounter.

**173.** A deputy responded that there was no report number for the conversation at that time.

**174.** Plaintiff later obtained Sheriff's documentation identifying Incident No. W25079253.

**175.** Plaintiff does not name the responding Sheriff's deputies as defendants in this action.

**176.** Plaintiff instead relies upon the deputies' statements, the preserved recording, Sheriff's Department records, CAD information, Defendant's email and attachment, Document 93, and related documentation as evidence concerning Defendant's conduct and role in initiating the challenged governmental contact.

**177.** Earlier in the November 18 encounter, Plaintiff recalls one deputy saying the matter was approaching criminal harassment and possible arrest. Plaintiff feared that her lawful court filings and requests for protection might lead to criminal accusations or arrest.

**178.** Later, a different deputy stated, ?We?re not here to arrest you.? Plaintiff alleges that this reassurance did not undo the fear caused by the earlier warning. The contrasting statements increased her confusion about the purpose and consequences of the visit.

**179.** Plaintiff alleges that the late-night arrival of multiple deputies, the earlier reference to criminal harassment and possible arrest, and the later reassurance together conveyed an intimidating governmental message about continued filings and protected activity.

**180.** Plaintiff alleges that this encounter initially chilled her speech and petitioning: she temporarily reduced or suspended filings. When she resumed, she filed and preserved records protectively and hypervigilantly because she still feared accusations or retaliation.

### DEFENDANT'S LATER STATEMENT

**181.** Defendant possessed firsthand knowledge of whether Plaintiff continued directly communicating with him after September.

**182.** During a January 30, 2026 court proceeding, the earlier communication issue was again discussed. Plaintiff stated on the record that the matter had already been taken care of and that a Sheriff had subsequently been sent to her house. Defendant acknowledged that the earlier matter had previously been discussed in court. Defendant described the earlier issue in a manner reflecting that Plaintiff had not been fully aware of proper filing procedures.

**183.** Defendant then stated: "We've not had contact outside of that." Plaintiff alleges that Defendant's statement is highly relevant to the factual characterization of the November 18 event. Plaintiff alleges that Defendant's subsequent statement supports Plaintiff's contention that there had not been continuing direct contact between Plaintiff and Defendant after the previously addressed matter. Defendant's statement is also consistent with Plaintiff's contention that Document 93 was a Clerk-filed court document rather than another direct private communication.

**184.** Plaintiff relies on Defendant's January 30, 2026 acknowledgment, "We've not had contact outside of that" (Tr. 7:1-5), together with the September instructions and the Clerk-filed status of Document 93, as evidence that the November referral did not arise from renewed private contact.

## FACEBOOK ACTIVITY AND SUBSEQUENT STATEMENTS

**185.** Facebook or social-media activity was raised in connection with the Sheriff's encounter. Sheriff's documentation references Facebook in connection with alleged communications, but does not state that Plaintiff's public Facebook criticism was the reason for dispatch. Defendant knew before the encounter that Plaintiff had publicly criticized him. Defendant knew Plaintiff had engaged in speech concerning governmental and judicial conduct. Defendant knew Plaintiff had blocked him on Facebook. Plaintiff alleges that these facts are relevant to determining Defendant's motive for escalating matters to law enforcement.

**186.** During the January 30 proceeding, Defendant distinguished private communications from Plaintiff's activity on a public-facing Facebook page. Defendant acknowledged the public nature of the Facebook forum and Plaintiff's ability to engage in speech there. Defendant recognized Plaintiff's First Amendment right to engage in public speech. Plaintiff alleges that Defendant's statements demonstrate his awareness that Plaintiff's public Facebook activity was distinguishable from prohibited private ex parte communications.

**187.** Defendant also discussed the accidental Facebook friend request. Plaintiff explained that the request occurred accidentally while she was attempting to block Defendant. Defendant responded that he understood that it had been an accident. Plaintiff alleges that this exchange demonstrates Defendant's knowledge that Plaintiff had attempted to block him rather than establish an ongoing private Facebook relationship with him.

## LATER FACEBOOK STORY EVIDENCE

**188.** After these events, Plaintiff eventually unblocked Defendant on Facebook.

**189.** Approximately one day after Plaintiff unblocked Defendant, an account associated with Jack Pitzo appeared among the viewers of Plaintiff's Facebook Story.

**190.** Plaintiff preserved screenshot and/or screen-recording evidence of the account appearing among her Story viewers.

**191.** Plaintiff does not allege that viewing a publicly accessible Facebook Story, standing alone, constitutes a constitutional violation.

**192.** Plaintiff does not rely upon this later event as proof, standing alone, of Defendant's motive in November 2025.

**193.** Plaintiff alleges only that the event constitutes additional circumstantial evidence potentially relevant to Defendant's awareness of and attention to Plaintiff's social-media activity.

## CONTINUING FEAR FOLLOWING FACEBOOK STORY ACTIVITY

**194.** After Plaintiff observed an account associated with Defendant Jack A. Pitzo among the viewers of her Facebook Story, Plaintiff blocked Defendant again. Plaintiff alleges that blocking Defendant did not end the fear and emotional distress she had experienced following the November 18, 2025 law-enforcement encounter.

**195.** After blocking Defendant again, Plaintiff began noticing names among the viewers of her subsequent Facebook Stories that appeared familiar to her. Plaintiff recognized or believed some of those names to be associated with Waukesha County courthouse personnel and members of the Waukesha County Sheriff's Office. Plaintiff observed that an increasing and substantial portion of the

names appearing in her Story-viewer lists appeared to her to be associated with those institutions.

**196.** In light of the prior law-enforcement visit to her home, Plaintiff experienced these observations as unsettling and alleges that they contributed to continuing fear, emotional distress, and apprehension about unwanted attention, additional law-enforcement involvement, and possible consequences arising from her public criticism and litigation activities.

**197.** Plaintiff does not allege that the appearance of these viewers, standing alone, proves that Defendant directed, coordinated, or authorized monitoring of her Facebook activity. Plaintiff alleges these observations as circumstances relevant to her continuing subjective fear and the effects she experienced after the November 18, 2025 encounter.

## COUNT I · FIRST AMENDMENT RETALIATION (42 U.S.C. § 1983)

**198.** Plaintiff realleges and incorporates the preceding paragraphs. The First Amendment protects the right to criticize public officials and governmental conduct. The First Amendment protects the right to petition government for redress of grievances.

**199.** Plaintiff engaged in protected activity by publicly criticizing governmental and judicial conduct. Plaintiff also engaged in protected petitioning activity by pursuing complaints, objections, filings, records requests, and other lawful governmental remedies. Plaintiff's properly submitted court filings constituted part of her lawful participation in and petitioning of government.

**200.** Defendant knew of Plaintiff's protected public criticism. Defendant knew of Plaintiff's filing and petitioning activity. Defendant knew of Plaintiff's Facebook activity. Defendant knew Plaintiff had blocked him on Facebook.

**201.** Plaintiff alleges that the November document was properly submitted through the Clerk's filing process rather than privately communicated directly to Defendant. Defendant knew that Plaintiff had previously been instructed to use that filing procedure. Defendant knew or reasonably could determine from the face of Document 93 that the document had been received and entered into the official court record.

**202.** Defendant thereafter personally initiated, caused, or materially procured a law- enforcement intervention at Plaintiff's private residence. Sheriff's Department records identify Defendant as the complainant. Sheriff's documentation states that Defendant wanted Plaintiff personally spoken to concerning communications outside proper channels. Defendant supplied information and documentation in connection with that intervention.

**203.** Plaintiff alleges that the documentation included Document 93. Document 93 itself demonstrated that it had entered the court record rather than constituting a new private text, email, or Messenger communication from Plaintiff to Defendant. Sheriff's personnel nevertheless questioned or spoke to Plaintiff concerning communications involving Defendant and discussed Facebook activity. Plaintiff denied texting Defendant. Plaintiff explained that the earlier communication issue had already been addressed. CAD documentation contemporaneously records Plaintiff's statement that the emails occurred in September and that she had sent no additional emails since.

**204.** Defendant subsequently stated on the court record, "We've not had contact outside of that." Plaintiff alleges that Defendant's subsequent statement corroborates Plaintiff's contention that the November Sheriff's intervention was not merely a response to continuing direct private communications.

**205.** Sheriff's personnel referenced the possibility of criminal harassment during the encounter.

**206.** Plaintiff alleges that sending law enforcement to a person's private residence under these circumstances constitutes an adverse governmental action capable of deterring a person of ordinary firmness from continuing protected speech and petitioning activity.

**207.** The potential deterrent effect was heightened by the late hour, the presence of multiple law-enforcement personnel at Plaintiff's home, and references to potential criminal harassment.

**208.** Plaintiff experienced actual fear that continuing lawful criticism, court filings, and petitioning could bring further law-enforcement intervention or criminal accusations. This fear produced two successive effects on her exercise of First Amendment rights: an initial interruption in filing, followed by protective, hypervigilant filing after she resumed.

**209.** The deterrent effect was immediate. During the law-enforcement encounter itself, Plaintiff made contemporaneous statements captured on video reflecting that the intervention was causing her to consider abandoning further efforts to pursue relief through the courts.

**210.** During the recorded law-enforcement encounter, Plaintiff stated, "I'm done, his dad can get away with whatever." Plaintiff alleges that this contemporaneous statement reflected the immediate chilling and deterrent effect of the law-enforcement intervention upon her willingness to continue pursuing relief through court filings and other lawful petitioning activity.

**211.** Plaintiff alleges that these contemporaneous statements reflected her immediate fear that continuing to file documents, pursue objections, petition the courts, or otherwise seek governmental redress could result in additional law-enforcement intervention or accusations of criminal conduct.

**212.** The deterrent effect was not merely hypothetical. Following the November 18, 2025 law-enforcement encounter, Plaintiff temporarily stopped submitting court filings for approximately one month because she feared that further lawful filings or requests for relief might bring another police visit or accusations of harassment. After resuming, she did not return to filing without fear: she instead engaged in unusually intensive, protective, hypervigilant filing and record preservation to document her actions and guard against further mischaracterization or unwanted intervention.

**213.** Plaintiff alleges that this fear was particularly significant because the November document associated with the Sheriff's intervention had itself been submitted through the Clerk's filing process after Defendant had previously instructed Plaintiff to use proper filing procedures.

**214.** Plaintiff had followed Defendant's instruction by submitting Document 93 through the Clerk rather than privately transmitting the document directly to Defendant.

**215.** Document 93 was received through the Clerk's filing process and entered into the official court record.

**216.** Plaintiff alleges that Defendant knew or reasonably could determine that Document 93 had been submitted through the Clerk and entered into the official court record.

**217.** Nevertheless, Defendant subsequently transmitted material associated with that Clerk-filed document in connection with his law-enforcement complaint or referral.

**218.** Sheriff's Department records identify Defendant as the complainant and state that Defendant wanted Plaintiff personally contacted and spoken to concerning communications outside proper channels.

**219.** Plaintiff alleges that, under these circumstances, the resulting law-enforcement intervention was objectively capable of deterring a person of ordinary firmness from continuing to file documents, petition government, criticize governmental conduct, or otherwise seek redress concerning Defendant.

**220.** The actual deterrent effect is demonstrated by Plaintiff's contemporaneous statements during the recorded encounter and her subsequent conduct. Plaintiff initially stopped submitting court filings for a period because she feared further law-enforcement intervention. When she resumed filing, her continuing fear altered the manner and intensity of her petitioning, leading to protective, hypervigilant filing and record preservation rather than an unrestricted return to her previous practices.

**221.** Plaintiff later resumed filing and preserving records, not because the fear had disappeared, but to protect herself against further allegations, preserve evidence, and prevent mischaracterization of her actions. This protective, hypervigilant activity did not undo the earlier interruption in filing or the continuing chilling effect on the way she exercised her rights.

**222.** Plaintiff relies upon Defendant's knowledge of her protected public criticism, filing activity, petitioning activity, and Facebook activity in alleging a causal connection between her protected activity and Defendant's initiation, complaint, procurement, or referral resulting in the law-enforcement contact.

**223.** Plaintiff further relies upon the fact that the original September communication issue had already been addressed, Defendant had instructed Plaintiff to use proper filing procedures, Plaintiff subsequently followed those instructions, and Defendant later acknowledged that there had been no additional contact outside the earlier issue.

**224.** Plaintiff relies upon the Clerk-filed status of Document 93, Defendant's subsequent transmission of material associated with that filing, the Sheriff's identification of Defendant as the complainant, and the Sheriff's documentation that the communications being addressed were not threatening and that Defendant wanted Plaintiff personally contacted and spoken to rather than seeking a criminal complaint.

**225.** Plaintiff alleges that her protected speech and petitioning activity were at least a motivating factor in Defendant's decision to involve law enforcement.

**226.** Plaintiff further alleges that the challenged governmental intervention would not have occurred in the same manner absent Defendant's personal initiation, complaint, procurement, or referral.

**227.** Defendant's alleged conduct caused Plaintiff fear, anxiety, emotional distress, intimidation, humiliation, and loss of security in her home. Plaintiff alleges two successive changes in her protected activity: an initial temporary cessation of court filings out of fear of further law-enforcement intervention, followed by protective, hypervigilant filing and record preservation after she resumed. Plaintiff also feared that continued criticism of governmental officials and lawful petitions could trigger additional adverse attention.

**228.** Plaintiff therefore alleges that Defendant retaliated against Plaintiff for exercising rights protected by the Free Speech and Petition Clauses of the First Amendment, causing the adverse and deterrent effects alleged above, in violation of the First Amendment and actionable pursuant to 42 U.S.C. § 1983.

**229.** Plaintiff incorporates the preceding factual allegations and the functional judicial-immunity discussion above.

**230.** Plaintiff seeks liability only for the distinct alleged complainant/referral function, not for rulings, review of Document 93, or other adjudicative acts.

**231.** The incident report's identification of Defendant as complainant and the pre-dispatch email are relevant to the nature of his alleged conduct, but the Court must determine the functional classification on the full record.

**232.** Plaintiff acknowledges that communication with police may in some circumstances be related to a judge's judicial or courtroom-security functions. She alleges the particular requested home encounter here was separate from adjudication.

**233.** No warrant, summons, or contempt order directing the home encounter has been identified in the records reviewed by Plaintiff; this circumstance is supporting context, not a standalone exception to judicial immunity.

## NONJUDICIAL AND EXTRAJUDICIAL NATURE OF DEFENDANT'S CONDUCT

**234.** Plaintiff alleges Defendant was acting as a reporting complainant rather than adjudicating when he allegedly initiated the particular law-enforcement encounter at issue.

**235.** Plaintiff alleges that the Clerk-filed status of Document 93 and the prior September instruction undermine the suggestion that she initiated a new improper private communication in November.

**236.** Plaintiff requests a functional determination of the challenged referral without asking this Court to revisit any family-court ruling.

**237.** Plaintiff alleges action under color of state law based on Defendant's use of his official account and position in connection with the referral, while recognizing that state action and immunity are separate legal questions.

**238.** Plaintiff alleges two successive chilling effects following the November 18, 2025 encounter. First, she stopped submitting court filings for approximately one month because she feared another police visit, accusations of harassment, or arrest. Her recorded statement, "I'm done, his dad can get away with whatever," reflects the immediate discouragement she experienced.

**239.** Second, after resuming her petitioning activity, Plaintiff alleges she began filing and preserving records with unusual intensity to document her conduct and protect against further mischaracterizations, harassment allegations, or unwanted law-enforcement intervention. This protective, hypervigilant filing activity included traveling from Milwaukee to Waukesha approximately two to three times per week to submit court filings, resulting in transportation expenses, physical strain, time burdens, and printing, copying, and supply costs. Plaintiff alleges this activity was substantially motivated by fear arising from the November 18, 2025 encounter. Her resumption of filing did not eliminate the initial chilling effect or the continuing apprehension that altered the manner in which she exercised her First Amendment rights.

**240.** Plaintiff alleges that on January 30, 2026, during the family-court hearing, she raised the earlier sheriff encounter in Defendant's presence. The transcript records Plaintiff stating, 'That was taken care of and a sheriff was sent out to my house,' and Defendant responding, 'Can I-- I just got to finish, ma'am' (January 30, 2026 transcript, p. 6, lines 10-13). Plaintiff alleges that she intended to explain how the encounter concerning an issue she understood had previously been addressed contributed to her concerns about Defendant's impartiality, but was unable to finish that explanation during the exchange.

**241.** Later during that same January 30 hearing, Plaintiff orally requested Defendant's recusal on grounds of perceived prejudice. The transcript records Plaintiff's request at pp. 15-16; Defendant then sought the positions of opposing counsel, the Guardian ad Litem, and the State's attorney. Attorney Amy Fry-Galow stated, 'No. We object strenuously'; Guardian ad Litem Katie Babe stated, 'I take no position'; and Attorney Daniel Sielaff did not take a position. Defendant denied recusal (transcript, p. 16, lines 1-25). Plaintiff alleges that the sheriff encounter formed part of her underlying recusal concern, although the full intended explanation was not completed in the earlier exchange.

**242.** Plaintiff personally recalls that opposing counsel and the Guardian ad Litem lightly chuckled during the recusal exchange. Plaintiff identifies that reaction as her firsthand recollection, not as an event independently recorded in the written transcript. Plaintiff alleges that she perceived the exchange as dismissive, particularly because she believed opposing counsel and the Guardian ad Litem had benefited from earlier rulings she disputed; she does not allege that their stated positions were identical or that the exchange alone proves coordinated misconduct.

**243.** During the recusal discussion Defendant described Plaintiff's previous courtroom behavior as 'very, very frankly abusive to this court' and referenced yelling and shouting; he also stated, 'If I could get rid of this case, believe me I would, because it's challenging' (January 30, 2026 transcript, p. 17, lines 1-9). Plaintiff disputes that her behavior was intended to threaten, harass, or disrespect the court and alleges that her visible emotional distress occurred amid episodes of severe anxiety, fear, and perceived intimidation, including distress she associates with the November 18 sheriff encounter. Plaintiff alleges that the characterization increased her fear that her conduct would be misunderstood or used against her.

**244.** On February 5, 2026, Plaintiff filed a formal written 'Motion for Recusal and Disqualification of the Presiding Judge' / 'Motion for Recusal/Substitution of Judge,' with a supporting bench memorandum. The CCAP docket records Defendant's notation: 'The timeline for substitution has long passed and the Court has already denied the motion to recuse.' A separate entry for a proposed order states, 'Court declined this motion on 01/30/2026.' Plaintiff alleges that this was her first formal written recusal motion and that the prior January 30 request had been made orally on the record.

**245.** She contends that the docket responses treated the earlier oral denial as disposing of the later written submission without expressly distinguishing the two procedural steps.

**246.** Plaintiff alleges that the recusal events further aggravated her distress and reinforced her perception that meaningful relief would not be obtained in time to affect her remaining opportunities for custody or placement before her son reached eighteen. She feared that appeals concerning the alleged misconduct, disputed accusations against her, and resulting rulings would extend beyond the remaining period of her son's minority. Plaintiff presents this as her contemporaneous perception of time-sensitive practical harm, not as a claim that appellate review was categorically unavailable or that the recusal rulings themselves supply a separate basis for federal damages.

**247.** Plaintiff further alleges that her protective filing activity included preparing detailed materials titled 'Judicial Bias Escalation Timeline,' 'Litigation Misconduct Escalation Timeline,' and 'Constitutional and Civil Rights Violations' to preserve contemporaneous records of the events and allegations she disputed. Plaintiff alleges that the time and expense devoted to documenting these matters were affected by the heightened vigilance and fear she experienced following the sheriff encounter.

**248.** Plaintiff also alleges she unpinned a Facebook post criticizing Defendant to reduce its prominence and began monitoring unfamiliar Facebook Story viewers more closely. She characterizes these as actual changes in expression and behavior caused by fear of renewed governmental attention, not merely unexpressed apprehension.

**249.** Plaintiff reports fear triggered by doorbells, unfamiliar vehicles, court communications, and references to police; crying, impaired daily functioning, nightmares, sleep disruption, and hypervigilance. She acknowledges significant preexisting and concurrent stressors and alleges the November 18 event contributed to or aggravated these symptoms rather than being their sole cause.

**250.** Plaintiff alleges intermittent pre-incident income from nail services, paintings, perfumes, and room sprays when her disabilities permitted. She reports temporarily closing her nail-services listing on Yelp and identifies a December 15, 2025 Messenger conversation concerning a customer inquiry in which she stated, "I am not doing nails currently." She seeks only provable lost net earnings or identifiable lost opportunities causally attributable to the challenged conduct.

**251.** Before November 18, 2025, Plaintiff earned intermittent income from nail services, paintings, perfumes, and room sprays when her physical disabilities permitted work without excessive pain or exhaustion. She alleges that subsequent psychiatric deterioration prevented her from continuing these activities, substantially reducing or eliminating that income. She claims no fixed schedule or guaranteed monthly earnings and seeks provable lost net earnings and identifiable lost opportunities attributable to the alleged conduct.

**252.** Plaintiff alleges that she placed her nail-services business in temporarily closed status after the November 18 encounter and possesses Yelp documentation concerning the closure.

**253.** Contemporaneous Messenger communications dated December 15, 2025 show a customer requesting nail services and Plaintiff's partner, Jeremy Maddox, relaying that request. Plaintiff replied to Jeremy, "I am not doing nails currently." In the same conversation, Jeremy and Plaintiff discussed concern about reportedly unavailable camera recordings of the Sheriff's encounter. Plaintiff offers the conversation as contemporaneous evidence of her unavailability for nail work and her continued concern about the encounter, not as independent proof that cameras were nonfunctional or that the encounter alone medically caused the business closure.

**254.** The customer again requested nail services on January 18, 2026. Plaintiff alleges these requests and the business's closure status support the existence of customer demand during her inability to work. The amount and cause of lost earnings remain subject to proof through customer communications, transactions, and medical records.

**255.** Plaintiff alleges that heightened protective filing activity following the encounter required additional printing, paper, ink, organizational supplies, and repeated Milwaukee-to-Waukesha trips. She alleges these costs only to the extent they were caused by the challenged conduct and are legally recoverable, without duplicating taxable litigation costs. These allegations supplement the existing complaint's discussion of economic injury.

**256.** Plaintiff identifies medical documentation, including a March 5, 2026 letter from Sabrina Stephens, LPC, describing reported anxiety, depression, hypervigilance, sleep disruption, and other symptoms. Plaintiff does not represent that the counselor determined legal causation. Plaintiff will rely on admissible records and testimony to distinguish the effects of the November 18 encounter from other contributing circumstances.

## CAUSATION

**257.** Plaintiff alleges that Defendant's November 18, 2025 communication or referral to the Waukesha County Sheriff's Department materially contributed to the subsequent law-enforcement encounter at Plaintiff's residence. Plaintiff identifies the timing of Defendant's communication, the sheriff's incident report, the computer-aided dispatch (CAD) records, and the responding deputies' conduct as evidence supporting the causal connection. The precise contents of Defendant's communication and any intervening decisions by law enforcement remain subject to discovery.

**258.** Plaintiff alleges that the underlying communication concerned a document she had submitted through the Clerk of Circuit Court, rather than a private message directed to Defendant. Plaintiff maintains that she had not sent Defendant threatening or harassing text messages or private communications. She alleges that Defendant's referral resulted in a law-enforcement response that would not have occurred in the same manner absent his involvement. Plaintiff seeks discovery concerning what Defendant communicated to law enforcement, what documents he supplied, and what instructions or representations prompted the deputies' response.

**259.** Plaintiff alleges that the November 18 encounter caused an immediate and substantial change in her sense of personal security and the manner in which she exercised her First Amendment rights. Fearing that criticism of judicial conduct, public commentary, or further court filings could provoke unwanted law-enforcement attention, she initially reduced or temporarily stopped filing for approximately one month. After resuming, she engaged in protective, hypervigilant filing and extensive record preservation to document her actions and guard against further mischaracterization or intervention. Plaintiff alleges that this second phase included repeated trips to submit filings and related expenses, as described in paragraph 235. Her resumption of filing did not mean the fear or chilling effect had ended.

**260.** Plaintiff further alleges that the fear initiated by the November 18 encounter continued after that date. When she contacted Milwaukee police on February 3, 2026, because she genuinely felt unsafe, that encounter was subsequently cited in contempt proceedings. Plaintiff alleges that this later experience intensified her existing apprehension and discouraged her from seeking law-enforcement assistance even when she feared for her safety. Plaintiff identifies these later events as contributing circumstances relevant to the duration and progression of her claimed injuries, without alleging that Defendant necessarily directed or controlled the subsequent contempt proceedings.

**261.** Plaintiff intends to establish causation through the November 18 sheriff's incident report, CAD records, Defendant's email and any accompanying attachment, Document 93 and its filing records, available recordings, contemporaneous communications, court records, witness testimony, and other admissible evidence. Plaintiff acknowledges that the extent of Defendant's involvement, any independent law-enforcement decisions, and the relative contribution of other events to her injuries remain factual questions. Plaintiff seeks damages only for injuries legally attributable to the alleged constitutional violation and supported by the evidence.

## DAMAGES AND INJURIES

**262.** As a direct and proximate result of the constitutional violation alleged herein, Plaintiff suffered emotional distress, fear, anxiety, humiliation, mental anguish, intimidation, and loss of security in her own home.

**263.** Plaintiff alleges additional out-of-pocket recordkeeping, copying, printing, and travel expenses associated with the incident and her protective filing activity. Plaintiff recognizes that ordinary litigation expenses and time spent pursuing claims are not automatically recoverable as damages and seeks only amounts legally compensable and supported by evidence.

**264.** Plaintiff alleges that during the period of intense distress surrounding the underlying proceedings and the November 18, 2025 law-enforcement encounter, she experienced recurring panic and anxiety attacks, uncontrollable crying, physical shaking, and overwhelming fear. She alleges that she vomited daily and, for an extended period, had substantial difficulty getting out of bed or carrying out ordinary activities.

**265.** Plaintiff alleges that her weight declined from approximately 155 pounds to approximately 115 pounds, a loss of approximately 40 pounds. She also alleges severe flare-ups of her preexisting autoimmune diseases, with increased pain, physical symptoms, and functional limitations. The precise dates, diagnoses, measurements, and medical attribution remain subject to available treatment records and appropriate medical evidence.

**266.** Plaintiff further alleges that during Thanksgiving 2025 she experienced suicidal intent. She states that after she posted a TikTok video, concerned friends and family rushed to her residence to intervene and support her. Plaintiff describes this as a serious mental-health crisis involving intent to take her life; she does not allege that a suicide attempt occurred.

**267.** Plaintiff alleges that the November 18, 2025 encounter contributed to or aggravated her fear and distress against the background of the broader proceedings. Plaintiff does not allege that Defendant's challenged conduct was the sole cause of every symptom, medical flare, change in weight, or mental-health event.

**268.** Plaintiff identifies contemporaneous communications, witnesses with firsthand knowledge, and available medical and mental-health records as potential evidence of timing, severity, treatment, and functional effects.

## EVIDENTIARY BASIS

**269.** Plaintiff possesses documentary, electronic, video, transcript, and public-record evidence supporting the factual allegations in this Complaint, including the September 19, 2025 hearing transcript addressing the original communication issue and Defendant's instructions concerning proper court filing procedure.

**270.** Plaintiff possesses or anticipates relying upon the January 30, 2026 hearing transcript concerning the earlier communication issue, including Defendant's statement, "We've not had contact outside of that," and his discussion of Plaintiff's Facebook activity, the Facebook block, the accidental friend-request issue, and Plaintiff's First Amendment rights.

**271.** Plaintiff possesses a recording of the November 18, 2025 encounter with Waukesha County Sheriff's personnel and door-camera evidence of its approximate timing and circumstances. The preserved recording captures her contemporaneous reaction, including "I'm done, his dad can get away with whatever." Plaintiff relies on that statement, her approximately one-month interruption in filing, and her later protective, hypervigilant filing and record preservation as evidence of successive effects on her petitioning activity.

**272.** Plaintiff possesses Sheriff's Department Incident Report W25079253, which identifies Defendant Jack Pitzo as the complainant, describes a harassment complaint involving him, states that

he did not wish to file a criminal complaint but wanted Plaintiff spoken to about contact outside proper channels, and describes the communications addressed as nonthreatening.

**273.** Plaintiff possesses Sheriff's CAD documentation concerning the November 18 encounter, including its record of her contemporaneous statement that emails occurred in September and that she had sent no additional emails since. Plaintiff disputes any inference that she privately emailed or messaged Defendant; her account is that she communicated through court filings.

**274.** Plaintiff possesses Defendant's November 18, 2025 email from his official Wisconsin Courts account, with the underlying case number as the subject and an attached PDF. Plaintiff identifies the approximately 7:28 p.m. email to Aaron Bogie, its attachment, and the later CAD chronology as evidence relevant to the origin and sequence of the referral.

**275.** Plaintiff possesses Document 93 and evidence that it was faxed on her behalf to the Clerk of Circuit Court. Its filing, receipt, scanning, docket, case-number, document-number, and filing-date information reflect its entry into the court record before the Sheriff's encounter. The circuit-court docket also reflects Defendant's November 18 review of the filed submission and his direction that the Guardian ad Litem and father's counsel be contacted for their positions.

**276.** Document 93 contains Messenger material involving a third party and court-record information concerning Clyde Kelvin Thompson, not private Messenger communications between Plaintiff and Defendant. Plaintiff possesses the encounter recording in which matters corresponding to the filed material were discussed, as well as the Sheriff's Department public-records response identifying responsive records concerning Defendant and the incident.

**277.** Plaintiff possesses public Facebook posts and other evidence documenting her criticism of Defendant and governmental conduct, her decision to block Defendant, Defendant's later discussion of the block and accidental friend-request issue, and screenshot or screen-recording evidence of an account associated with Defendant appearing among her Facebook Story viewers approximately one day after she unblocked Defendant.

**278.** Plaintiff anticipates seeking relevant nonprivileged discovery of the original email with complete headers and metadata, its actual attachment, forwarding and reply history, other communications between Defendant and law enforcement, dispatch and CAD records, and records bearing on the purpose and sequence of the referral. The content of undisclosed communications and any intervening law-enforcement decisions remain matters for discovery.

**279.** Plaintiff identifies medical and mental-health documentation, including treatment records and letters from treating professionals, concerning symptoms, care, functional limitations, and effects she attributes to the encounter. She will distinguish preexisting conditions and other contributing circumstances from injury or aggravation attributable to the alleged violation.

**280.** Plaintiff identifies Sandra Sammer and Jeremy Maddox as potential firsthand witnesses only as to matters each personally observed, heard, or otherwise knows, including relevant communications, Plaintiff's observable emotional condition, and the encounter or its aftermath. Plaintiff does not represent that either has already executed an affidavit.

**281.** Plaintiff may seek relevant nonprivileged testimony or records from Amy Fry-Galow, Guardian ad Litem Katie Babe, and Ternay E. Beck IV concerning courtroom discussions, communications, and facts within their personal knowledge. Hearing transcripts remain the primary record of statements made in open court. Plaintiff does not allege that these individuals participated in or knew of the law-enforcement referral absent supporting evidence.

## SUPPLEMENTAL STATEMENT — POTENTIAL ADDITIONAL EVIDENCE OF RETALIATION IN STATE-COURT PROCEEDINGS

**282.** The identification of potential witnesses, records, and discovery requests does not mean that testimony has already been given, depositions have occurred, or anticipated evidence necessarily supports Plaintiff's allegations. Discovery remains subject to the Federal Rules of Civil Procedure.

**283.** Plaintiff believes she possesses substantial additional evidence of alleged retaliatory treatment extending into the underlying Waukesha County child-custody proceedings following the November 18, 2025 sheriff referral. Plaintiff believes that relevant events, their timing, and portions of the conduct at issue can be corroborated through publicly accessible Wisconsin Circuit Court Access (CCAP) docket entries, filed motions, orders, hearing transcripts, and other official records. Plaintiff does not contend that the existence of a docket entry, without more, establishes retaliatory intent.

**284.** Plaintiff specifically preserves her allegations concerning her January 30, 2026 oral request for Defendant's recusal and her February 5, 2026 written recusal motion, described above, because those requests arose in part from the November 18 sheriff referral and Plaintiff's resulting fear and perception of retaliation. Plaintiff believes additional state-court records may bear on chronology, knowledge, motive, the chilling of her protected petitioning activity, and the extent of her alleged injuries. Plaintiff does not seek to impose damages liability solely for judicial rulings or to obtain federal appellate review of custody orders.

**285.** Plaintiff respectfully asks that, at the appropriate stage and subject to the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and any applicable immunity and admissibility rulings, she be permitted to identify and seek consideration of relevant state-court records for permissible evidentiary purposes concerning her pleaded extrajudicial First Amendment retaliation claim. Plaintiff understands that this statement does not itself establish admissibility, expand her cause of action, or guarantee permission to introduce any particular record.

## ADDITIONAL FACTUAL ALLEGATIONS — SEPTEMBER 11, 2026 DOCKET DISCREPANCY

**286.** On September 11, 2026, Plaintiff inadvertently submitted a copy of her intended federal civil-rights complaint naming Defendant Jack A. Pitzo into a separate Waukesha County Circuit Court civil proceeding, Case No. 2026CV001011, rather than into the United States District Court for the Eastern District of Wisconsin.

**287.** Before September 11, 2026, Plaintiff had not notified Defendant or the Waukesha County Circuit Court that she intended to pursue this federal civil-rights litigation against Defendant.

**288.** On September 11, 2026, Plaintiff observed that Defendant's name appeared in the "Court official" field of two docket entries in the separate civil proceeding, although Judge Jeremy J. Guza was identified as the responsible judicial officer.

**289.** The entries concerned a Court of Appeals deputy clerk's letter regarding a defective statement on transcript and an appellate order concerning waiver of the appellate filing fee.

**290.** Plaintiff promptly filed requests for clarification and correction of the record, including Documents 92 and 94, and requested restriction of the inadvertently filed federal complaint through Document 93.

**291.** On September 14, 2026, the state-court docket reflected that Judge Guza reviewed Plaintiff's requests and that the identification of Defendant as court official had been corrected as a clerical error.

**292.** Plaintiff acknowledges the recorded clerical-error explanation. Plaintiff documents the chronology because the inadvertent filing and the appearance of Defendant's name occurred on the same date. Plaintiff does not know which event occurred first.

**293.** Plaintiff does not presently possess evidence establishing that Defendant personally reviewed the inadvertently filed complaint, participated in the separate civil proceeding, directed the disputed docket entries, or

influenced the outcome of that proceeding.

**294.** Plaintiff includes these allegations solely to document the sequence of events. Plaintiff does not assert that the docket discrepancy, standing alone, establishes retaliation, improper judicial involvement, or an independent constitutional violation.

**295.** Plaintiff finds the timing of this discrepancy extremely suspicious and troubling in light of what she describes as horrendous and deplorable treatment she has experienced in the separate civil proceeding, Case No. 2026CV001011, which is not assigned to Defendant. Plaintiff states this as her sincerely held concern based on her experience and the coinciding dates, not as proof that Defendant caused that treatment, participated in the proceeding, or influenced any ruling. Plaintiff requests that the chronology be preserved for evaluation if relevant evidence becomes available.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jamie Lynn Haeuser respectfully requests that the Court enter judgment in her favor and against Defendant Jack A. Pitzo, in his individual capacity, and:

**A.** Request that, although Plaintiff was permitted to proceed in forma pauperis and did not prepay the federal filing fee, the Court consider assessing that fee against Defendant and directing any authorized payment to the Clerk of Court or otherwise allocating it as law permits; Plaintiff does not seek personal reimbursement of an unpaid fee;

**B.** Declare, to the extent declaratory relief is legally available and appropriate, that Defendant's retaliatory use of governmental law-enforcement authority against Plaintiff for protected First Amendment activity violated Plaintiff's constitutional rights;

**C.** Award Plaintiff compensatory damages in an amount to be determined by the evidence and the jury;

**D.** Award Plaintiff nominal damages for any constitutional violation established where compensatory damages are unavailable or cannot be quantified;

**E.** Award punitive damages against Defendant in his individual capacity if the evidence establishes the level of culpability required under federal law;

**F.** Award compensation, upon proof of causation and legal recoverability, for necessary medical treatment and related travel, including Spravato treatment transportation in Plaintiff's vehicle driven by Sandra Sammer, and any legally compensable value or actual cost of necessary transportation assistance, without double recovery;

**G.** Award proven out-of-pocket economic losses attributable to Defendant's actionable conduct, including provable lost net earnings and identifiable lost nail-services or other business opportunities, as well as qualifying printing, copying, records, supplies, and transportation expenses, without duplicating taxable litigation costs;

**H.** Award Plaintiff allowable taxable costs and other litigation expenses permitted by Fed. R. Civ. P. 54(d), 28 U.S. C. § 1920, and other applicable law, including qualifying service, transcripts, depositions, witness and subpoena expenses, and copying costs;

**I.** Award expert witness fees and testimony-related expenses only to the extent independently authorized by applicable law, including allowable statutory witness costs;

**J.** Award any attorney's fees recoverable under 42 U.S. C. § 1988 should Plaintiff later become represented by counsel and such fees become legally recoverable; Plaintiff does not seek fees for her own pro se work; and

**K.** Grant such additional relief as the Court determines just, equitable, and permitted by law.

## JURY DEMAND

Plaintiff demands trial by jury on all issues triable by jury.

Respectfully submitted,

Jamie Lynn Haeuser, Plaintiff, Pro Se

Signature: Jamie Haeuser Date: 10-27-2026

PAGINATION NOTE: The amended complaint concludes here. The separately maintained limited-filing exhibit and evidence index begins at its original page 32. The original evidence page numbers have not been renumbered; the gap is intentional.